CASE NO. 8:23-cv-00201-TPB-AAS

MATTHEW SIMMONS, SHEILA MURRAY,
JACK MITCHELL, JACKIE RODRIGUEZ,
MADISON LIEFFORT, AND EMILY CARTER,

     Plaintiffs,

vs.

USI INSURANCE SERVICES, LLC, a foreign
limited liability company and USI ADVANTAGE
CORP., a foreign corporation,

     Defendants.

_____/

USI INSURANCE SERVICES LLC,

     Counter-Plaintiff,

vs.

MATTHEW SIMMONS, JACK MITCHELL
and SOUTHEAST SERIES OF LOCKTON
COMPANIES, LLC.,

     Counter-Defendants.

_____/

**COUNTER-PLAINTIFF'S PROPOSED INTERIM
<u>ORDER GRANTING PRELIMINARY INJUNCTION</u>**

This matter is before the Court on Counter-Plaintiff USI Insurance Services

LLC's ("USI") Motion for Temporary Restraining Order and Preliminary

Injunction and Incorporated Memorandum of Law, filed on January 30, 2023 (the

"Motion"), which included a sworn declaration and documentation in support. (Doc. 9). Counter-Defendants Matthew Simmons ("Simmons"), Jack Mitchell ("Mitchell") (collectively "the Producers"), and Southeast Series of Lockton Companies, LLC ("Lockton") filed Objections to the Motion for Temporary Restraining Order on the same day. (Docs. 12, 13).

On February 2, 2023, the Court held a Rule 16 Status Conference and ordered further briefing on the enforceability of the employment agreements underlying the action. (Doc. 19). On February 6, 2023, USI filed its "Brief on the Legality and Enforceability of the Agreements" (Doc. 22) and Counter-Defendants filed their Memoranda in Opposition (Docs. 23, 24). Counter-Defendants filed no contrary declarations or evidence in their Objections or Memoranda. On February 7, 2023, the Court held a hearing to address this matter. (Doc. 25).

After reviewing the Motion and additional briefing and the court file, and hearing argument of counsel, the Court finds that the Agreements are enforceable. Simmons and Mitchell are ordered to comply with the terms of their Agreements as set forth herein. While the Court will not, at this time, enjoin Lockton from servicing the accounts that have transitioned from USI, the members of the Simmons Team who left USI with Simmons are so enjoined. Counter-Defendants will not solicit the USI client accounts managed by the Producers to leave USI until further order of the Court. The Court will hold a subsequent hearing in approximately 60 days on April 12, 2023 (the "Subsequent Hearing"), and will make further ruling as necessary.

#185002028_v1

**Background**

USI and Lockton are large national insurance brokerage firms and are competitors in the industry. Until their departure, Simmons and Mitchell were producers in USI's Tampa, Florida, office.

Simmons and Mitchell entered into written Employment Agreements with USI (the "Agreements"). (Docs. 3-1, 3-2). In exchange for their Agreements and employment, the Producers were highly compensated and received benefits and support from USI. The Agreements contain a provision requiring the Producers to provide a 60-day notice of resignation, wherein they would continue to be paid by USI and wherein USI could require the Producer to cease performing any services (i.e, sit out) during that period (the "Notice Period"). *See* (Docs. 3-1 § 8.2; 3-2 § 7.2). The Agreements also contain several restrictive covenants including:

First, provisions stating that the Producers, for two years post-employment, cannot, with respect to Client Accounts[1] that they managed or regularly serviced while at USI, directly or indirectly, (i) sell, provide, or accept any request to provide services in competition with USI for any Client Account; (ii) solicit or attempt to solicit services in competition with USI to any Client Account; (ii) divert or attempt to divert services away from USI with respect to any Client Account; (iv) consult for any Client Account with respect to services in competition with USI; (v) sign a broker of record letter with any Client Account to provide services in competition

---

[1]     The capitalized terms used herein have the meanings ascribed to them in the Employment Agreements.

3

with USI; or (vi) induce the termination, cancellation or non-renewal of any Client Account (the "Account Restriction"). *See* (Docs. 3-1 §§ 7.5, 7.6; 3-2 §§ 6.5, 6.6).

The Account Restriction is specifically limited to: (a) USI Client Accounts that the Producer managed or regularly serviced and/or about which the Producers obtained Confidential Information on behalf of USI within the last two years of their employment with USI; or (b) Active Prospective Clients that the Producer solicited and/or about which the Producer obtained Confidential Information on behalf of USI within the last six months of the Producer's employment with USI. *Id.*

Second, a provision prohibiting the Producers, for two years post-employment, from, directly or indirectly, soliciting employees that the Producer worked with at USI (the "Employee Non-Solicit"). *See* (Docs. 3-1 § 7.7; 3-2 § 6.7).

Third, a provision prohibiting the Producers from disclosing USI's confidential information (the "Non-Disclosure Provision"). *See* (Docs. 3-1 § 7.2; 3-2 § 6.2).

On January 25, 2023, the Producers resigned from USI via email, stating they would be joining USI's competitor, Lockton, effective immediately. Within a few hours on the same day, four other USI employees who supported the Producers and two other USI employees who worked on the accounts at issue (the "Simmons Team"[2]) also resigned, effective immediately, to join Lockton.

---

[2] The other members of the Simmons Team are Sheila Murray, Jackie Rodriguez, Madison Lieffort, and Emily Carter, Plaintiffs in the underlying Complaint (Doc. 1), whose USI employment

#185002028_v1

January 25, 2023, shortly after submitting their resignations, the Producers and most of the Simmons Team (i.e., Sheila Murray, Jackie Rodriguez, Madison Lieffort, and Emily Carter) sued USI in the Thirteenth Judicial Circuit in and for Hillsborough County asserting a single count seeking a declaration that their Agreements are illegal and unenforceable. (Doc. 1).[3] The underlying action was removed to this Court by Counter-Plaintiffs, who then filed an Answer (Doc. 2) and Counterclaim (Doc. 3) against Lockton and the Producers alleging breaches of contract, breach of fiduciary duties, and interference.

The same day, and some within a matter of hours, USI client accounts previously serviced by Simmons or Mitchell began submitting "Broker of Record" letters naming Lockton as their broker to handle their insurance needs. One client emailed a "Notice of Broker Change Form" to Lockton, writing that the change form was being submitted "as discussed" and that "Matt [Simmons] and his Team are simply the BEST!," and copied Simmons' on the email at his USI email address. (Doc. 3 ¶¶ 5–6, Doc. 9 ¶ 28). Since the morning of Simmons' resignation, approximately 20 USI client accounts previously serviced by the Simmons Team have moved all or a portion of their business to Lockton.

In its Motion, USI seeks a preliminary injunction: (1) requiring Simmons and Mitchell to comply with their Agreements; (2) enjoining Lockton from

---

agreements are exhibits to the Complaint and non-parties Chris Kakish and Theresa Kemp. Each member of the Simmons Team agreed to an employment agreement with substantially similar restrictive covenants as the Agreements, with the exception of the Notice Period.

[3] Murray, Lieffort, Rodriguez and Carter are represented in this Action by the same counsel who represent the Counter-Defendants.

#185002028_v1

interfering with the Agreements and Simmons and Mitchell and those working in concert with them (specifically Lockton and the Simmons Team) from soliciting and accepting business from customers of USI serviced by the Producers; and (3) enjoining Lockton from soliciting, moving, servicing, or accepting broker of record change requests from customers previously serviced by the Simmons Team.

## **Legal Standard**

To obtain the injunctive relief that the Court orders here, a movant must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Roman Catholic Diocese of Brooklyn v. Cuomo*, ––– U.S. ––––, 141 S.Ct. 63, 65-66, 208 L.Ed.2d 206 (2020).

## **Analysis**

### 1. **Substantial Likelihood of Success on the Merits** [4]

Florida's restrictive covenant statute provides for the enforcement of restrictive covenants, like those here, when the covenants are:  a) set forth in writing, signed by the party against whom enforcement is sought; b) supported by the existence of one or more legitimate business interests; and c) reasonably

---

[4]     USI also seeks additional injunctive relief pursuant to its tortious interference and other claims against Lockton, including that Lockton no longer be permitted to retain the customers moved from USI. At this juncture, the Court withholds ruling on this additional relief until a more fulsome record can be developed.

6

necessary to protect the legitimate business interests.  Fla. Stat. §§ 542.335(1)(a) – (c). Legitimate business interests may include valuable confidential business information, substantial relationships with specific prospective or existing clients, and/or extraordinary or specialized training, among other interests.  Fla. Stat. § 542.335(1)(b).  "To establish that the agreement itself is lawful and enforceable, a party must simply plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant." *USI Ins. Servs. of Fla. Inc. v. Pettineo*, 987 So. 2d 763, 766 (Fla. 4th DCA 2008). "Once the party has established that the restraint is reasonably necessary to protect the legitimate business interest, the burden shifts to the party opposing enforcement of the agreement to establish that it is overbroad or otherwise not reasonably necessary." *Id.*

The Agreements were set forth in writing and signed by the departing employees. Further, USI carried its burden by establishing the existence of several legitimate business interests underlying restrictive covenants that are reasonable in scope. *See, e.g.*, *Hilb Rogal & Hobbs of Fla., Inc. v. Grimmel*, 48 So. 3d 957, 963 (Fla. 4th DCA 2010) (insurance broker had a legitimate business interest in preserving its relationships with customers, so as to support its request for a temporary injunction to enforce similar restrictive covenants); *see also Scarbrough v. Liberty Nat. Life Ins. Co.*, 872 So. 2d 283, 285 (Fla. 1st DCA 2004) (recognizing that similar restrictive covenant provisions protected the employer's legitimate business interests); *USI Ins. Servs. of Fla. Inc. v. Pettineo*, 987 So. 2d at 766 (same). Lockton uses and enforces similar provisions in its own employment

7

agreements, which other courts have found to support legitimate business interests. *See Mountain West Series of Lockton Companies, LLC v. Alliant Insurance Services, Inc.*, Case No. 2019-0226-JTL, 2019 WL 2536105, *1 (Del. Ch. June 20, 2019).

Counter-Defendants assert that the Agreements are unenforceable because USI can have no substantial relationships with Simmons' client accounts because they consisted of contacts with whom Simmons had pre-existing close friendships.

Florida courts have held that an employer has a legitimate business interest in its substantial relationships with specific prospective or existing customers ("legitimate business relationship"), even when an employee brings customers to the employer on the basis of an existing personal relationship. *Grimmel*, 48 So. 3d at 961. Furthermore, a legitimate business relationship can also exist where it is alleged that customers elected to end their relationship with an employer of their own accord and sought out former employees on their own. *See Env't Servs., Inc. v. Carter*, 9 So. 3d 1258, 1266 (Fla. 5th DCA 2009). Also, pursuant to the plain language of his Agreement, Simmons acknowledged that the "Client Accounts are owned by [USI]. (Doc. 3-1 § 10.7), and that USI had a legitimate business interest in those customers (Doc. 3-1, whereas clauses). Simmons, who was paid in excess of $3.5 million in 2022, and $1.5 million in January of 2023, was highly compensated, in part, *because* of his relationships and contacts. USI also provided framework, staffing, and support to assist Producers to sell and service those clients Accordingly, even taking the facts in the light most favorable to Counter-

Defendants and assuming close personal relationships existed between Simmons and USI's customers, USI has established a legitimate business interest in its substantial relationships with specific prospective or existing customers, and its Agreements are due to be enforced.

To that end, although the Producers were bound by, and Lockton knew of, the Notice Period, Lockton permitted the Producers to begin their employment with Lockton without its observance. While the Court will not go as far as to order the Producers to return to USI or to sit out,[5] Lockton and the Producers are instead enjoined, until the Subsequent Hearing and as set forth in detail below, from further soliciting or servicing USI's customers who were previously serviced by the Simmons Team and who have not moved their business to Lockton, so as to ensure that USI receives the benefit of the Notice Period for which it bargained.

Similarly, as set forth in detail below, the Simmons Team is also enjoined from further soliciting or servicing USI's customers who it previously serviced while employed by USI, whether those customers moved to Lockton or remained at USI, by virtue of: (1) the fact that doing so would indirectly constitute prohibited acts by Simmons and Mitchell; (2) their own employment agreements with USI that contain substantially similar restrictive covenants that are before the Court in Plaintiffs' underlying declaratory action; and (3) the Court's authority to enjoin

---

[5] It is not necessary for the Court to reach the merits of Counter-Defendants' arguments that the Court is not permitted to require the Producers to return to USI or sit out, as the Court is providing alternative relief. *See USI Ins. Servs. of Fla. Inc. v. Pettineo*, 987 So. 2d at 767.

third-parties acting in concert with the Producers, *see USI Ins. Servs. of Fla. Inc. v. Pettineo,* 987 So. 2d at 767.

## 2. Irreparable Harm

Here, in the wake of the Producers' departure, USI has lost substantial client accounts to a direct competitor and faces a potential continued loss. "When the failure to grant injunctive relief creates the possibility of a permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong has been satisfied." *New Horizons Computer Learning Centers, Inc. v. Silicon Valley Training Partners, Inc.,* Case No. 2:02-CV-459, 2003 WL 23654790 *7 (M.D. Fla. Nov. 12, 2003).

## 3. Balance of Equities

The threatened (and realized) harm to USI is lost customers, trained-employees, revenue, and goodwill, in all of which it has invested substantial time, money, and resources to build and maintain. Once lost, these specific assets cannot be recovered. The threatened harm to the Producers is the inability to solicit or service the customers they serviced during employment with USI, but this merely requires that they comply with the restrictive covenants to which they agreed and for which they were substantially compensated. The Producers are not prohibited from working in the industry or even from working at Lockton or from servicing or soliciting any client that they did not manage or regularly service while at USI. The harm to USI outweighs any harm that would result to the Producers from enforcing the Agreements' terms for 60 days.

10

**4.     The Public Interest**

The public has a cognizable interest in the protection and enforcement of contractual rights. Accordingly an injunction here will not be adverse to the public interest.

**5.     Bond**

Under Florida law, a bond is required to issue an injunction enforcing a non-compete agreement. *See* Fla. Stat. § 542.335(j). Here, USI will be required to post a bond in the amount of $500,000.00, which will be sufficient to compensate the Producers for any loss incurred as a result of an injunction if they ultimately prevail on the merits of this case.

## <u>Conclusion</u>

Accordingly, it is ordered that:

1.  The Agreements at issue are valid and enforceable.

2.  Simmons must comply with the restrictive covenants of his Agreement in sections 7.2, 7.5, 7.6, and 7.7, and Mitchell must comply with the restrictive covenants of his Agreement in sections 6.2, 6.5, 6.6, and 6.7, and Simmons and Mitchell are enjoined, until further order of the Court from:

    a.  Using or disclosing any Confidential Information of USI, any Predecessor, or any USI Company except as authorized in the Agreements;

b. directly or indirectly, soliciting, servicing, consulting with, accepting business from or diverting the Client Accounts as set forth in more detail in the Account Restriction in sections 7.5 and 7.6 of the Simmons Agreement and sections 6.5 and 6.6 of the Mitchell Agreement ;

3. Further, with regard to USI customers previously serviced by the Simmons team that have named Lockton as broker of record on all of their insurance policies since the Producers' Departure (the "Diverted Customers"), the Producers and the Simmons Team are enjoined, until further order from the Court, from selling, providing, or accepting any request to provide services in any manner to the Diverted Customers, through their employment with Lockton or otherwise.

4. Additionally, with regard to USI customers previously serviced by the Simmons Team that have named Lockton as broker of record for a portion but not all of their policies since the Producers' Departure (the "Partially Diverted Customers"), the Producers and the Simmons Team are enjoined, until further order from the Court, from selling, providing, or accepting any request to provide services in any manner to the Partially Diverted Customers with respect to the business that has been moved to Lockton. Moreover, Lockton, the Producers, and the Simmons Team are prohibited from, directly or indirectly,

12

accepting any broker of record regarding policies for which USI is the broker or otherwise diverting or moving additional business from USI to Lockton.

5. Finally, with regard to any USI customers previously serviced by the Simmons team who have not, as of the date of this Order, moved to Lockton any of their business (the "Retained Customers"), Lockton, the Producers, and the Simmons Team, are enjoined, until further order from the Court, from directly or indirectly, soliciting, servicing, consulting with, accepting business from or diverting the Retained Customer

**DONE** and **ORDERED** this _____ day of February, 2023.

_____
Thomas Barber
United States District Judge

#185002028_v1