UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MATTHEW SIMMONS, SHEILA
MURRAY, JACK MITCHELL,
JACKIE RODRIGUEZ, MADISON
LIEFFORT, AND EMILY CARTER,

    Plaintiffs,                                  CASE NO. 8:23-cv-201-TPB-AAS

vs.

USI INSURANCE SERVICES, LLC, a
foreign limited liability company and
USI ADVANTAGE CORP., a foreign
corporation,

    Defendants.
_____/

USI INSURANCE SERVICES LLC,

    Counter-Plaintiff,

vs.

MATTHEW SIMMONS, JACK MITCHELL
and SOUTHEAST SERIES OF LOCKTON
COMPANIES, LLC.,

    Counter-Defendants.
_____/

**<u>ORDER GRANTING MOTION FOR
PRELIMINARY INJUNCTION AND ENJOINING
VIOLATIONS OF EMPLOYMENT AGREEMENTS</u>**

This matter is before the Court on Counter-Plaintiff USI Insurance Services,

LLC's ("USI") "Motion for Temporary Restraining Order and Preliminary Injunction and Incorporated Memorandum of Law," filed on January 30, 2023. (Doc. 9). Plaintiffs/Counter-Defendants Matthew Simmons, Jack Mitchell, and Southeast Series of Lockton Companies, LLC ("Lockton") filed objections to the motion to the extent the motion sought a temporary restraining order on January 30, 2023. (Docs. 12, 13).

On February 2, 2023, the Court held a Rule 16 Status Conference and ordered further briefing on the enforceability of the employment agreements underlying the action and USI's motion. (Doc. 19). On February 6, 2023, the parties filed additional legal memoranda as directed. (Docs. 22; 23; 24). On February 7, 2023, the Court held a hearing on this matter, denied USI's motion to the extent it sought a temporary restraining order, determined that the employment agreements were enforceable, and directed the parties to file proposed orders with respect to preliminary injunctive relief. (Doc. 25). On February 10, 2023, the parties filed proposed orders. (Docs. 29; 30).

Based on the foregoing, Simmons and Mitchell are ordered to comply with the terms of their employment agreements as set forth below. The other Plaintiffs, members of Simmons' team who left USI with Simmons, are also similarly enjoined as set forth below. The Court will not, at this time, enjoin Lockton from servicing accounts that have transitioned from USI. The Court will hold a subsequent hearing on April 12, 2023, and will make further findings and rulings as necessary.

**Background**

USI and Lockton are large national insurance brokerage firms and are competitors in the industry. Until their departure, Simmons and Mitchell were "Producers" in USI's Tampa, Florida, office. Simmons led a team consisting of Mitchell, Emily Carter, Madison Lieffort, Sheila Murray, and Jackie Rodriguez. (Doc. 9-1 ¶ 5).

Simmons and Mitchell entered into written Employment Agreements with USI (the "Agreements"). (Docs. 3-1; 3-2). In exchange for their Agreements and employment, Simmons and Mitchell were highly compensated. In the year preceding his departure from USI, Simmons received over $3 million in payments. (Doc. 9-1 ¶ 7). The Agreements contain a provision requiring Simmons and Mitchell to provide a 60-day notice of resignation (the "Notice Period"). *See* (Docs. 3-1 § 8.2; 3-2 § 7.2). The Agreements also contain several restrictive covenants including the following:

First, the Agreements provide that Simmons and Mitchell, for two years post-employment, cannot, with respect to Client Accounts[1] that they managed or regularly serviced while at USI, directly or indirectly, (i) sell, provide, or accept any request to provide services in competition with USI for any Client Account; (ii) solicit or attempt to solicit services in competition with USI with respect to any Client Account; (ii) divert or attempt to divert services away from USI with respect to any Client Account; (iv) consult for any Client Account with respect to services in competition with USI; (v) sign a broker of record letter with any Client Account to provide services in

---

[1] The capitalized terms used herein have the meanings ascribed to them in the Agreements.

competition with USI; or (vi) induce the termination, cancellation or non-renewal of any Client Account (the "Account Restriction"). *See* (Docs. 3-1 §§ 7.5, 7.6; 3-2 §§ 6.5, 6.6).

The Account Restriction is specifically limited to: (a) USI Client Accounts that Simmons or Mitchell managed or regularly serviced and/or about which they obtained Confidential Information on behalf of USI within the last two years of their employment with USI; or (b) Active Prospective Clients that Simmons or Mitchell solicited and/or about which they obtained Confidential Information on behalf of USI within the last six months of their employment with USI. *Id.*

Second, a provision prohibiting Simmons and Mitchell for two years post-employment, from, directly or indirectly, soliciting employees that they worked with at USI (the "Employee Non-Solicit"). *See* (Docs. 3-1 § 7.7; 3-2 § 6.7).

Third, a provision prohibiting Simmons and Mitchell from using or disclosing USI's confidential information (the "Non-Disclosure Provision"). *See* (Docs. 3-1 § 7.2; 3-2 § 6.2).

On January 25, 2023, Simmons and Mitchell resigned from USI via email, stating they would be joining USI's competitor, Lockton, effective immediately. Within a few hours on the same day, Carter, Lieffort, Murray, and Rodriguez, who supported Simmons and Mitchell and worked on the accounts at issue, also resigned effective immediately to join Lockton. Two other USI employees, Chris Kakish and Theresa Kemp, members of another group at USI, also resigned that day to join Lockton.

4

Also on January 25, 2023, Simmons, Mitchell, and other Simmons team members filed a complaint against USI and USI Advantage Corp. in the Thirteenth Judicial Circuit in and for Hillsborough County containing a single count seeking a declaration that their Agreements are illegal and unenforceable. (Doc. 1). The action was removed to this Court by USI and USI Advantage Corp., who then filed an answer. (Doc. 2). USI filed a counterclaim against Simmons, Mitchell, and Lockton, alleging claims for injunctive relief, breach of contract, breach of fiduciary duties, tortious interference, conspiracy, and aiding and abetting. (Doc. 3).

The same day, a number of USI client accounts previously serviced by Simmons or Mitchell submitted "Broker of Record" letters naming Lockton as its broker to handle its insurance needs. One client emailed a "Notice of Broker Change Form" to Lockton, writing that the change form was being submitted "as discussed" and that "Matt [Simmons] and his Team are simply the BEST!," and copied Simmons' on the email at his USI email address. (Doc. 3 ¶¶ 5–6, Doc. 9 ¶ 28). Since the morning of Simmons' resignation, approximately 20 USI client accounts previously serviced by the Simmons team have moved all or a portion of their business to Lockton.

In its motion, USI seeks a preliminary injunction: (1) requiring Simmons and Mitchell to comply with their Agreements; (2) enjoining Lockton from interfering with the Agreements, (3) enjoining Simmons and Mitchell and those working in concert with them (specifically Lockton and the other individuals who joined Lockton from USI) from soliciting and accepting business from customers of USI serviced by Simmons or Mitchell; and (4) enjoining Lockton from soliciting, moving, servicing, or

5

accepting broker of record change requests from customers previously serviced by the Simmons team.

## Legal Standard

To obtain the injunctive relief that the Court orders here, a movant must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Roman Catholic Diocese of Brooklyn v. Cuomo*, – U.S. –, 141 S. Ct. 63, 65-66 (2020).

## Analysis

**1.    Substantial Likelihood of Success on the Merits**

Florida's restrictive covenant statute provides for the enforcement of non-solicitation covenants, like those here, when the covenants are: a) set forth in writing, signed by the party against whom enforcement is sought; b) supported by the existence of one or more legitimate business interests; and c) reasonably necessary to protect the legitimate business interests. §§ 542.335(1)(a)-(c), *F.S.* Legitimate business interests may include valuable confidential business information, substantial relationships with specific prospective or existing clients, and/or extraordinary or specialized training, among other interests. § 542.335(1)(b), *F.S.* "To establish that the agreement itself is lawful and enforceable, a party must simply 'plead and prove the existence of one or more legitimate business interests justifying

the restrictive covenant.'" *USI Ins. Servs. of Fla., Inc v. Pettineo*, 987 So. 2d 763, 766 (Fla. 4th DCA 2008) (quoting § 542.335(1)(b), *F.S.*). "Once the party has established that the restraint is reasonably necessary to protect the legitimate business interest, the burden shifts to the party opposing enforcement of the agreement to establish that it is overbroad or otherwise not reasonably necessary." *Id.*; § 542.335(c), *F.S.*

The Agreements were set forth in writing and signed by the Simmons and Mitchell. Further, USI has established one or more legitimate business interests underlying the restrictive covenants. *See, e.g., Hilb Rogal & Hobbs of Fla., Inc. v. Grimmel*, 48 So. 3d 957, 963 (Fla. 4th DCA 2010) (insurance broker had a legitimate business interest in preserving its relationships with customers, so as to support its request for a temporary injunction to enforce similar restrictive covenants).

Counter-Defendants assert that USI can have no substantial relationships with Simmons' client accounts because they consisted of contacts with whom Simmons had pre-existing close friendships. While USI disputes Counter-Defendants' allegations regarding the nature and details of Simmons' personal friendships with the USI clients he serviced, even construing the proffer of facts in the light most favorable to Counter-Defendants, the Court finds that USI has established a legitimate business interest in its substantial relationships with specific existing or prospective customers. Florida courts have held that an employer has a legitimate business interest in its substantial relationships with specific prospective or existing customers even when an employee brings customers to the employer on the basis of existing personal relationships. *See Grimmel*, 48 So. 3d at

7

961. Furthermore, a legitimate business relationship can also exist where it is alleged that customers elected to end their relationship with an employer of their own accord and sought out former employees on their own. *See Envt'l Servs., Inc. v. Carter*, 9 So. 3d 1258, 1266 (Fla. 5th DCA 2009). Also, pursuant to the plain language of his Agreement, Simmons acknowledged that the "Client Accounts are owned by [USI]." *See* (Doc. 3-1 § 10.7). The Court finds that Simmons is a sophisticated individual who was paid retention bonuses of $1.5 million in January 2022 and $1.5 million in January 2023, and was highly compensated, in part, because of his relationships and contacts.

Accordingly, for all the reasons discussed, USI is likely to succeed on the merits of its claims against Simmons and Mitchell.

### 2. Irreparable Harm

Here, in the wake of Simmons' and Mitchell's departure, USI has lost client accounts to a competitor and faces a potential continued loss. "When the failure to grant injunctive relief creates the possibility of a permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong has been satisfied." *New Horizons Computer Learning Centers, Inc. v. Silicon Valley Training Partners, Inc.*, Case No. 2:02-cv-459, 2003 WL 23654790, at *7 (M.D. Fla. Nov. 12, 2003).

### 3. Balance of Equities

The threatened (and realized) harm to USI includes lost customers, revenue, and goodwill. The threatened harm to Simmons and Mitchell is the temporary inability to solicit or service customers they serviced when they were employed by

USI. Simmons and Mitchell are not prohibited from working in the industry or even from working at Lockton or from servicing or soliciting any USI Client Account that they did not manage or regularly service while at USI. The Court finds that the harm to USI outweighs any harm that would result to Simmons or Mitchell from an injunction that merely requires that they comply with the restrictive covenants to which they agreed and for which they were substantially compensated, until a further hearing and order in this matter in approximately 60 days.

### 4. The Public Interest

The public has a cognizable interest in the protection and enforcement of contractual rights. Accordingly, an injunction here will not be adverse to the public interest.

### 5. Bond

Under Florida law, a bond is required to issue an injunction enforcing a non-compete agreement. *See* § 542.335(j), *F.S.*; *see also* Fed. R. Civ. P. 65(c) (requiring movant to give security for issuance of preliminary injunction). Here, USI will be required to post a bond in the amount of $500,000.00, which will be sufficient to compensate Simmons and Mitchell for any loss incurred as a result of an injunction if they ultimately prevail on the merits of this case.

### 6. The Notice Period

The Court finds that enforcing the 60-day Notice Period is neither practicable nor useful at this point, nor is it necessary to ensure compliance with the restrictive covenants or protect USI's interests, given the injunctive relief granted by this Order.

### 7. The Simmons Team

The undisputed timing of the Simmons team's departure from USI to join Lockton demonstrates that they are acting in concert with Simmons. Allowing Simmons team members Carter, Lieffort, Murray, or Rodriguez to solicit or service customers previously serviced while at USI would result Simmons and/or Mitchell accomplishing indirectly what they are prohibited from doing directly. Moreover, these Simmons team members are represented by the same counsel as Simmons, Mitchell, and Lockton, and joined together in filing the complaint that initiated this action. Their employment agreements, attached as exhibits to the complaint, contain restrictions substantially similar to those in the Simmons and Mitchell Agreements. Accordingly, pursuant to the Court's equitable powers, its power to ensure this Order is effective, and its authority to enjoin persons in active concert or participation with Simmons or Mitchell, the Court also enjoins Plaintiffs Carter, Lieffort, Murray, and Rodriguez, as set forth below.

It is therefore

**ORDERED**, **ADJUDGED, and DECREED**:

1. Counter-Plaintiff USI's "Motion for Temporary Restraining Order and Preliminary Injunction and Incorporated Memorandum of Law" (Doc. 9) is **GRANTED IN PART** and **DENIED IN PART** as follows.

2. Simmons must comply with the restrictive covenants of his Agreement in sections 7.2, 7.5, 7.6, and 7.7, and Mitchell must comply with the restrictive

covenants of his Agreement in sections 6.2, 6.5, 6.6, and 6.7, and Simmons and Mitchell are enjoined, until further order of the Court from:

a. using or disclosing any Confidential Information of USI, any Predecessor, or any USI Company except as authorized in the Agreements;

b. directly or indirectly, soliciting, servicing, consulting with, accepting business, diverting, signing a broker of record letter, or inducing termination, cancellation or nonrenewal, with respect to the Client Accounts, as set forth in more detail above in this Order and in the Account Restriction in sections 7.5 and 7.6 of the Simmons Agreement and sections 6.5 and 6.6 of the Mitchell Agreement.

The foregoing prohibitions are limited to: (a) USI Client Accounts that Simmons or Mitchell managed or regularly serviced and/or about which they obtained Confidential Information on behalf of USI within the last two years of their employment with USI; or (b) Active Prospective Clients that Simmons or Mitchell solicited and/or about which they obtained Confidential Information on behalf of USI within the last six months of their employment with USI.  The foregoing prohibitions apply regardless of whether the relevant present or former USI customer has named Lockton as broker of record with respect to all of a portion of its insurance policies, or has moved all or part of its business to Lockton, since the departure of Simmons and Mitchell from USI.

3.  Plaintiffs Carter, Lieffort, Murray, and Rodriguez are also enjoined from taking any of the actions prohibited by the preceding paragraph.

4.  Nothing in this Order shall prohibit Lockton, at this time, from working with and servicing the insurance needs of current clients of Lockton or any entity associated with Lockton, including but not limited to those clients who have returned executed broker of record letters to Lockton, except to the extent Simmons, Mitchell, and other Simmons team members are enjoined pursuant to this Order. However, the parties should note that a tortious interference claim is presently pending that may result in further court orders prohibiting Lockton from doing business with certain clients associated with Simmons/Mitchell as referenced in this action.

5.  The motion is otherwise **DENIED WITHOUT PREJUDICE.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 15th day of February, 2023.

           **TOM BARBER**
           **UNITED STATES DISTRICT JUDGE**