UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO. 8:23-cv-00201-TPB-AAS

MATTHEW SIMMONS, SHEILA MURRAY,
JACK MITCHELL, JACKIE RODRIGUEZ,
MADISON LEIFFORT, AND EMILY CARTER,

    Plaintiffs,

vs.

USI INSURANCE SERVICES, LLC, a foreign
limited liability company and USI ADVANTAGE
CORP., a foreign corporation,

    Defendants.
_____/

USI INSURANCE SERVICES LLC,

    Counter-Plaintiff,

vs.

MATTHEW SIMMONS, JACK MITCHELL
and SOUTHEAST SERIES OF LOCKTON
COMPANIES, LLC.,

    Counter-Defendants.
_____/

**USI INSURANCE SERVICES, LLC'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT AS TO MARKET VALUE DAMAGES**

USI Insurance Services, LLC hereby replies in support of its Motion for Summary Judgment as to Market Value Damages [ECF No. 130] ("Motion"). USI's Motion seeks only a finding that its market value damage model ("FMV Model") may be one of the models presented to the jury, who would determine whether to award, and the amount of, damages under that model.

I. **USI IS NOT SEEKING DESTRUCTION OF BUSINESS DAMAGES**.

The FMV Model does not seek damages for the complete destruction of USI's business. Rather, the FMV Model provides a basis to determine a reasonably certain amount of damages for the loss of identified restricted accounts ("Lost Accounts"). USI, through fact and expert witnesses, intends to present the jury with evidence on how the insurance market would value the Lost Accounts. Thus, the "market value" damages USI seeks to present to the jury is a method for valuing USI's loss—it is not a method for valuing USI's entire business as a going concern.

Since USI is not seeking "destruction of business" damages, the cases cited by Defendants in the Opposition [ECF 139] are inapplicable. Those cases involve plaintiffs seeking damages for a total destruction of business where the business survived. *See, e.g. Environmental Biotech, Inc. v. Sibbitt Enterprises, Inc.*, No. 203-CV-124-FTM-33SPC, 2008 WL 5070251, at *2 (M.D. Fla. Nov. 24, 2008) (plaintiff continued to provide the same services to the *same customers* even after termination of franchise rights, and abandoned damage models other than a full valuation of its business); *KMS Rest. Corp. v. Wendy's International Inc.*, 194 F. App'x 591, 601 (11th Cir. 2006) (business could continue to operate under different

1

franchise brand); *Zinn v. GJPS Lukas, Inc.*, 695 So. 2d 499, 500 (Fla. 5th DCA 1997) (in negligence case for pesticide over-spraying resulting in loss of raised shrimp, plaintiff entitled to lost profits rather than the full value of its business because plaintiff continued to sell shrimp); *Aetna Life & Cas. Co. v. Little*, 384 So. 2d 213, 216 (Fla. 4th DCA 1980) (destroyed business was entitled to market value damages, but plaintiff could not also double recover for lost profits).

Market-based damages are awardable even where a plaintiff does not claim a destruction of its entire business when the market can provide a standard to value the lost business, as is the case here. The FMV Model for valuing the Lost Accounts is akin to the valuation of the plaintiff's lost pea crops in *Twyman v. Roell*, 166 So. 215 (Fla. 1936). Discussing *Twyman*, Defendants argue "the plaintiff's lost profits from the breach of a contract to plant vegetables were calculated by assessing **the market price** of those vegetables—not the market value of a going concern." Opposition, at 9 (emphasis added). USI agrees. Just as the damages to the farmer of his pea crop were discernable through the market price of peas, USI's damages from the Lost Accounts can be discerned from their market price of the accounts. *See Twyman*, 166 So. at 217 (finding market valuations sufficient as "some standard" for calculating lost profits). Because the FMV Model is a standard to value the Lost Accounts, and is not a valuation of USI as a going concern, the model is a lost profits calculation endorsed under Florida law for nearly a century. *Id.*

Defendants' reliance on a Florida Standard Jury Instruction for Business Cases specific to allegations of a destroyed business likewise fails because that

2

instruction addresses only when a plaintiff seeks to receive the value of its entire business upon its destruction. *See In re Standard Jury Instructions—Cont. & Bus. Cases*, 116 So. 3d 284, 335 (Fla. 2013). Defendants ignore the adjacent instruction on lost profits that states damages must merely meet "some standard," which the committee explained as: "The requisite … allowance [for lost profits] is some standard, **such as regular market values**, or other established data, by reference to which the amount may be satisfactorily established.") (citations and internal quotation marks omitted, emphasis added). *Id.*, at Instr. 504.3.

Defendants cite *In re SRQ Taxi Management, LLC*, a *Daubert* case, but that case actually supports USI's contention that the FMV Model is a form of lost profits. 2023 WL 473225 (Bankr. M.D. Fla. Jan. 26, 2023), at * 11. In *In re SRQ Taxi*, the plaintiff sought "enterprise value" damages based on the "total loss of SRQ Taxi's business." *Id.*, at *5. But SRQ Taxi continued to operate and was therefore not entitled to damages for the full value of its business. *Id.,* at * 11. Nevertheless, plaintiff's expert testified that lost "enterprise value" was simply terminology for lost future profits, and the court analyzed the expert's opinion based on that assumption. *Id.* The court ultimately struck the expert's opinion under *Daubert* not because plaintiff presented "enterprise value" as its lost profits calculation, but because the expert used an unreliable methodology in applying a 6x EBITDA multiple based on a prior sale from 30 years ago in a different market, among other failings. *Id.* at 12. Unlike in *In re SRQ Taxi*, the FMV Model is a form of lost profits that applies an EBITDA multiple *to the Lost Accounts only*, and not

3

to determine an enterprise value for USI. For this reason, Defendants' remaining authorities are equally unpersuasive, and Defendants' conclusion that "Florida courts have consistently drawn a sharp divide between market value and lost profits" (Opposition, at p. 7) is unsupported. *See, e.g., Cox Enterprises, Inc. v. News-Journal Corp.*, 469 F. Supp. 2d 1094, 1108 (M.D. Fla. 2006) (not addressing lost profits and instead endorsing an FMV calculation based on Florida's election-to-purchase minority shareholder protection statute); *In re Biddiscombe Int'l, L.L.C.*, 392 B.R. 909, 918 (Bankr. M.D. Fla. 2008) (not addressing lost profits and instead holding that in fraud cases Florida uses a flexibility approach which permits the recovery of out-of-pocket damages and/or benefit-of-the bargain damages, including, where appropriate, business valuations).

## II. MARKET VALUE DAMAGES ARE AWARDABLE IN TORT.

Defendants rely on *Crom, LLC v. Preload, LLC* to assert that USI cannot recover damages in tort claims based on underlying contract breaches, but in that case the tort claims were disposed of because the plaintiff could not prove causation. 380 F. Supp. 3d 1190, 1207 (N.D. Fla. 2019). Specifically, the *Crom* plaintiff could not prove that it was the second lowest bidder on any project, and that the taking of its information was thus the cause of it losing out on bids. *Id.*, at 1199, 1208. Here, it is undisputed that USI was the incumbent broker on the Lost Accounts. Additionally, USI's tort claims remain pending and provide independent bases for establishing liability as to Defendants.

4

Defendants' remaining cases likewise do not support their conclusion that USI cannot recover tort damages because of the Producers' underlying contract breaches. *See, e.g. Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1245 (11th Cir. 2009) (holding only that disgorgement was not available for breach of contract claim against former employee where new employer was not sued and no tort claims were pursued); *Marcus, Stowell & Beye Gov't Sec., Inc. v. Jefferson Inv. Corp.*, 797 F.2d 227, 231 (5th Cir. 1986) (applying Texas law in holding that damages for tortious interference must be identical to damages for an underlying breach of contract, but concluding that the purpose of such damages is to place the plaintiff in the same "economic position" it was in prior to the breach/interference); *Am. Air Filter Co., v. McNichol*, 527 F.2d 1297 (3d Cir. 1975) (relying on Kentucky and Pennsylvania law, and holding following a jury verdict on damages for Defendants that plaintiff failed to offer sufficient evidence in support of speculative damages). Defendants rely on the inapposite, out-of-state cases of *Marcus*[1] and *Am. Air Filter Co.* despite attempting to distinguish *USI Insurance Services, LLC v. Aitkin*, No. 3:21-cv-00267-HZ (D. Or. Sept. 21, 2022) and *USI Insurance Services, LLC v. Southeast Series of Lockton Co., LLC*, No. 1:20cv2490 (N.D. Ga Apr. 26, 2023), Minute Entry Order, for the sole reason that those cases were pending in Oregon and Georgia, respectively. USI's out-of-state

---

[1] This District in *Ameritox, Ltd. v. Millennium Labs., Inc.*, 8:11-CV-775-T-24-TBM, 2014 WL 1456347, at *12 (M.D. Fla. Apr. 14, 2014), also applying Texas law, found that the *Marcus* case was not so limited, and that "disgorgement of profits is an available remedy for a tortious interference claim under Texas law."

5

authorities, however, are far more analogous because they involved substantially the same FMV Model presented here, which were permitted to proceed to the jury.

Though Defendants attempt to distinguish the disgorgement damages awardable in *Bailey v. St. Louis*, 196 So. 3d 375, 381 (Fla. 2d DCA 2016) because no breach of contract claims were raised, this is a distinction without a difference. Those tortious interference claims were based, in part, on defendant's interference with the plaintiff's physician service contracts, which included confidentiality covenants and, as to at least one former employee, a non-compete. *See id.*, at 380-81, n.3.[2] Defendants cite to the egregious conduct in *Bailey* but egregious conduct is a matter for the jury. And here similar egregious conduct occurred. *See, e.g.*, SOF, at ¶¶ 35-36 (Simmons met with 27 USI clients while still employed at USI to solicit them to Lockton and disparage USI); SOF, at ¶¶ 22-23 (Lockton's business strategy of stealing books of business without paying for them, which has resulted in at least 9 lawsuits and/or settlements); SOF, at ¶¶ 16-20 (Lockton projection of total revenue expected to move from USI to Lockton from restricted accounts pre-departure of the Simmons Team, which was nearly exact to the dollar of the annual revenue for the Lost Accounts, and identifying compensation to Simmons as a "Purchase Price Payback"); SOF, at ¶ 37 (Departing Employees causing USI Confidential Information to be sent to Lockton to assist in moving the accounts).

---

[2] The *Bailey* Complaint, which sets forth the terms of the physician service contracts interfered with, is available online with the clerk of court for the Thirteenth Circuit Court.

6

Thus, like in *Bailey*, disgorgement and other tort damages are available here. And the FMV Model is a fair representation of the ill-gotten gains to Defendants (e.g., acquiring the Lost Accounts without paying for them).

### III. OTHER CHALLENGES ARE FOR CROSS-EXAMINATION.

Defendants' remaining challenges to the FMV Model are better addressed at cross-examination at trial. For example, Defendants raise the irrelevant point that Frost's valuation includes all Lost Accounts even if the Lost Account had a prior friendship with Simmons. Opposition, at 17. But whether a certain Lost Account should be included in the FMV Model is a matter for trial, and not a reason to preclude USI from offering the FMV Model to a jury. *See Wilson v. City of St Petersburg*, Case No. 8:19-cv-1868, 2020 WL 8613257, at *2 (M.D. Fla. Dec. 23, 2020) (Barber, J.). Defendants also raise that Lockton offered to compensate Simmons even more if Simmons declined business from the Lost Accounts. Opposition, at 20. Putting aside that not a shred of evidence supports this claim, the extent of Lockton's interference is a question for the jury and does not support the exclusion of the FMV Model. Likewise, Defendant's inaccurate portrayals of testimony from Frost and Dr. Gron should be addressed at trial, and do not support the exclusion of the FMV model. *See, e.g.,* Opposition, at ¶ 18 (stating that Dr. Gron testified that the FMV Model does not measure Defendants' ill-gotten gains, when in fact the cited testimony confirms only that USI was not a willing seller, and thus could have demanded a higher price for the Lost Accounts).

Submitted this 11th day of January, 2024.

/s/ *David E. Cannella*
David E. Cannella, Esquire
Florida Bar No. 983837
david.cannella@hklaw.com
HOLLAND & KNIGHT LLP
200 South Orange Avenue, Ste. 2600
Post Office Box 1526 (32802-1526)
Orlando, FL 32801
Phone: (407) 244-1165
Fax: (407) 244-5288

and

Matthew Zimmerman, Esquire
Florida Bar No. 011484)
matthew.zimmerman@hklaw.com
HOLLAND & KNIGHT LLP
777 South Flagler Drive, Suite 1900
West Palm Beach, Florida 33401-6148
Phone: (561) 833-2000
Fax: (561) 650-8399

*Attorneys for Defendants,*
*USI Insurance Services, LLC, and*
*USI Advantage Corporation and Counter*
*Plaintiff, USI Insurance Services, LLC*