## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MATTHEW SIMMONS, SHEILA
MURRAY, JACK MITCHELL,
JACKIE RODRIGUEZ, MADISON
LIEFFORT, and EMILY CARTER,

      Plaintiffs,

v.                                                              Case No.: 8:23-cv-201-TPB-AAS

USI INSURANCE SERVICES, LLC, a
foreign limited liability company and
USI ADVANTAGE CORP., a foreign
corporation,

      Defendants.

_____/

USI INSURANCE SERVICES LLC,

      Counter-Plaintiff,

v.

MATTHEW SIMMONS, JACK MITCHELL
and SOUTHEAST SERIES OF LOCKTON
COMPANIES, LLC,

      Counter-Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART "COUNTER-DEFENDANTS MATTHEW SIMMONS, JACK MITCHELL, AND SOUTHEAST SERIES OF LOCKTON COMPANIES, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT"

This matter is before the Court on "Counter-Defendants Matthew Simmons,

Jack Mitchell, and Southeast Series of Lockton Companies, LLC's Motion for

Partial Summary Judgment," filed on November 30, 2023.  (Doc. 127).  Counter-

Plaintiff USI Insurance Services, LLC, filed a response in opposition on December 21, 2024 (Doc. 135).  Counter-Defendants filed a reply on January 11, 2023 (Doc. 156).  Based on the motion, response, reply, the court file, and the record, the Court finds as follows:

## <u>Background</u>

The background for this case is set forth in detail in the Court's previous orders on USI's motion for a temporary restraining order and preliminary injunction.  (Docs. 31; 73).  That discussion is incorporated by reference.

Briefly stated, Plaintiffs/Counter-Defendants Matthew Simmons and Jack Mitchell were highly compensated "Producers" in the Tampa, Florida, office of Defendant/Counter-Plaintiff USI, a large commercial insurance broker.  Under the employment agreements between Simmons and Mitchell and USI, Simmons and Mitchell were free to leave USI to join USI's competitors, but among other things, they were required to provide a 60-day notice of resignation.  In addition, for two years post-employment, Simmons and Mitchell could not solicit or service accounts they formerly serviced while at USI.  They were also prohibited for two years from directly or indirectly soliciting other employees they had worked with at USI.

On January 25, 2023, Simmons and Mitchell resigned from USI via email, stating they would be joining USI's competitor, Southeast Series of Lockton, LLC, effective immediately. Within a few hours, Carter, Lieffort, Murray, and Rodriguez, who supported Simmons and Mitchell and worked on the accounts at issue, resigned effective immediately to join Lockton.

The same day, Simmons, Mitchell, and other Simmons team members filed a complaint against USI and USI Advantage Corp. in the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, seeking a declaration that their agreements are illegal and unenforceable. The action was removed to this Court by Defendants USI and USI Advantage Corp., who then filed an answer. USI also counterclaimed against Simmons, Mitchell, and against Lockton as an additional counterclaim defendant, alleging claims for injunctive relief, breach of contract, breach of fiduciary duties, tortious interference, conspiracy, and aiding and abetting breach of fiduciary duty.

The same day, several USI clients whose accounts were previously serviced by Simmons or Mitchell submitted "broker of record" letters naming Lockton as their new broker to handle their insurance needs. Since the morning of Simmons' resignation, 26 USI clients previously serviced by the Simmons team have moved all or a portion of their business to Lockton.

After leaving USI, Simmons, Mitchell, and the other Simmons team members serviced the accounts of former USI clients to one degree or another in violation of their agreements until the Court entered a temporary injunction prohibiting them from doing so. After the original order was entered, Lockton discovered that two additional former USI employees – Theresa Kemp and Chris Kakish – who were not expressly covered by the injunction order and were not named Plaintiffs in this litigation, were actively servicing one or more of these accounts. The Court then

entered an additional order prohibiting them from doing so as well.  It appears the prohibitions in the Court's orders have been complied with.

Trial is currently set to begin in April 2024, and the parties have filed various pretrial motions.  This Order addresses Counter-Defendants' motion for partial summary judgment on the tort claims asserted in USI's counterclaim against Simmons, Mitchell, and Lockton.

### Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A properly supported motion for summary judgment is not defeated by the existence of a factual dispute.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Only the existence of a genuine issue of material fact will preclude summary judgment.  *Id*.

The moving party bears the initial burden of showing that there are no genuine issues of material fact.  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact.  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995).  If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true, and all reasonable inferences must be drawn in the nonmoving party's favor.  *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

<u>Analysis</u>

***Tortious Interference – Predisposition***

Counter-Defendants argue that summary judgment should be granted in favor of Lockton and against USI on USI's claim against Lockton for tortious interference on the ground that Simmons and Mitchell were predisposed to breach their agreements with USI.  As Counter-Defendants correctly argue, under Florida law, the breaching party's predisposition to breach defeats a claim for tortious interference, even where the defendant is aware that the breaching party intends to breach and takes actions that further the breaching party's plan.  *See, e.g., Centennial Bank v. ServisFirst Bank*, No. 8:16-cv-88-CEH-CPT, 2022 WL 10219893, at *8-11 (M.D. Fla. Oct 10, 2022).  In denying USI's motion for a preliminary injunction against Lockton, the Court found that USI had not shown a substantial likelihood of success on the merits of its tortious interference claim because, on the record presented as it then existed, Simmons and Mitchell were predisposed to breach their agreements with USI.  *See* (Doc. 73 at 15-18).  Counter-Defendants now argue that summary judgment should be granted on USI's tortious interference claim on the same basis.

USI's response points to Lockton's extensive involvement in the events that led to Simmons' and Mitchell's move from USI to Lockton and USI's loss of the client accounts at issue in this case.  Lockton's "playbook" included coordinating Simmons' and Mitchell's departures, promising to compensate them and indemnify them against any suit brought by USI, accepting clients serviced by Simmons and

Mitchell who moved to Lockton, and allowing Simmons and Mitchell to serve these clients at Lockton, knowing all the while that Simmons and Mitchell planned to take actions that breached or arguably breached their agreements with USI. But this line of argument revisits essentially the same facts USI relied on in seeking preliminary injunctive relief, which the Court found insufficient to overcome Simmons' and Mitchell's predisposition to breach. USI adds the point that the concept of "predisposition" involves the breaching party's mental state and intent, which are matters generally reserved for determination by the jury and inappropriate for summary judgment. *See Diamond Resorts U.S. Collection Dev., LLC v. Newton Grp. Transfers, LLC*, No. 9:18-CV-80311-REINHART, 2022 WL 1652587, at \*14 (S.D. Fla. Apr. 4, 2022).

Early in this case, the Court recognized that some of the things that allegedly took place here supported the entry of a preliminary injunction. And the Court entered such an injunction. At that time though, the Court also recognized that other of Lockton's activities appeared to be suspect but not necessarily actionable. The question for future litigation was framed – in practical terms – as whether Lockton's activities "crossed the line" from aggressive business practices to activities that are legally actionable.

USI has been predicting from the very beginning of this case that it would uncover evidence during discovery that would show significant and actionable wrongdoing on the part of Lockton. But at this late point in the case, it is not clear that has happened. USI has certainly uncovered actions on the part of Lockton that

might be characterized as disturbing, bad business practices, aggressive, unseemly, unprofessional, unfair, underhanded, greedy, or even immoral. While some of these descriptions may fairly apply to Lockton's activities, this does not transform those activities into conduct that is legally actionable. As such, the Court believes that summary judgment may well be appropriate on USI's tortious interference claim. However, in an abundance of caution, the Court will hear further argument on this issue, either at the pretrial conference or in another setting prior to trial. The Court accordingly denies summary judgment as to this ground without prejudice.

### *Independent Tort Doctrine*

Counter-Defendants argue that USI's tort claim for breach of fiduciary duty and/or duty of loyalty against Simmons and Mitchell is precluded by the independent tort doctrine. Counter-Defendants expansively frame the doctrine as barring tort claims where the acts complained of "relate to the performance of the contract." USI responds that the independent tort doctrine does not bar its tort claims because Simmons and Mitchell were employees of USI, and by virtue of their employment by USI as Producers, they were in positions of trust and confidence. Simmons and Mitchell therefore owed USI a duty of loyalty regardless of the terms of their written agreements with USI. USI argues that duty was breached when, while still employed at USI, Simmons and Mitchell solicited USI clients to abandon USI to go to Lockton.

The Court does not understand Counterdefendants to argue that Simmons and Mitchell would not have owed a duty of loyalty if they had been employed by

USI without entering into the agreements at issue in this case.[1]  Their position instead appears to be that the existence of the agreements, and the inclusion of an express provision in the agreements "acknowledging a duty of loyalty," brings the independent tort doctrine into play and precludes tort claims based on the same alleged acts that violate the contractual duty of loyalty.

While the case law contains statements of the independent tort doctrine that are admittedly somewhat vague and at times inconsistent, the Court concludes that USI's position is correct.[2]  The independent tort doctrine precludes a party from using a purely contractual duty to manufacture a duty in tort that would not otherwise exist.  An "independent tort," therefore, is one based on breach of a duty that exists independently of the parties' contract.  Under this view, an action that breaches a contract may *also* constitute an independent tort if the action breaches an independently-existing tort duty.  This formulation of the independent tort doctrine is supported by decisions of the Florida Supreme Court.  *See, e.g., Lewis v. Guthartz*, 428 So. 2d 222, 223 (Fla. 1982) (holding that punitive damages are not recoverable for a breach of contract, "[b]ut *where the acts constituting a breach of*

---

[1] Counter-Defendants state that "any duties Simmons and Mitchell may have had to USI would have arisen solely from their employment contracts," but they offer no explanation why that is the case and no response to USI's cited cases and legal argument that Simmons and Mitchell owed a common law duty of loyalty to USI, which they violated by disloyal actions they took while still employed by USI.

[2] *See Lamm v. State Street Bank & Tr.*, 749 F.3d 938, 947 (11th Cir. 2014) (noting that *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399 (Fla. 2013) "may" have left the independent tort doctrine intact but that "the exact contours of this possible separate limitation, as applied post-*Tiara*, are still unclear"); *Jabil, Inc. v. Essentium, Inc.*, No. 8:19-cv-1567-T-23SPF, 2020 WL 10353824, at *5 (M.D. Fla. May 29, 2020) (noting that the "contours of the flawed 'independent tort doctrine' unsurprisingly remain inaccessible" and that Florida precedent offers "conceptual confusion" rather than helpful guidance).

*contract also amount to a cause of action in tort* there may be a recovery of exemplary damages upon proper allegations and proof.") (quoting *Griffith v. Shamrock Vill., Inc.,* 94 So. 2d 854 (Fla. 1957)) (emphasis supplied).[3]

Counter-Defendants' more expansive reading admittedly finds support in case law decided before the Florida Supreme Court abolished the contractual-privity economic loss rule in *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Companies, Inc.*, 110 So. 3d 399 (Fla. 2013), as well as in some decisions even after *Tiara*.  In the Court's view, however, Counter-Defendants' formulation is inconsistent with *Lewis* and other Florida Supreme Court cases on the independent tort doctrine and would effectively resurrect the contractual-privity economic loss rule abolished by the Florida Supreme Court in *Tiara*.[4]

Accordingly, Counter-Defendants' motion for summary judgment as to this issue is denied.  *See also Tiara Condo. Ass'n, Inc. v. Marsh, USA, Inc.*, 991 F. Supp. 2d 1271, 1279 (S.D. Fla. 2014) (denying summary judgment on claims for breach of fiduciary duty based on the independent tort doctrine where fiduciary duty claim was "based on the breach of duties which are not contractually grounded, and

---

[3] *See also Weimar v. Yacht Club Point Estates, Inc.*, 223 So. 2d 100, 103 (Fla. 4th DCA 1969) (holding that "no cause of action in tort can arise from a breach of a duty existing by virtue of contract"); *Jabil, Inc.*, 2020 WL 10353824, at *6 (holding that where a duty of loyalty derived from "a societally imposed duty to safeguard another's interests and resources," then the fact of the "contract's duplication of, or intersection with, societally imposed duties fail[ed] to eviscerate [the plaintiff's] tort claims.").

[4] To the extent language in decisions such as *Bedoyan v. Samra*, 352 So. 3d 361, 366 (Fla. 3d DCA 2022) and *Peebles v. Puig*, 223 So. 3d 1065, 1068 (Fla. 3d DCA 2017) would apply the independent tort doctrine to situations where a tort duty exists independently of the parties' contract, the Court believes the case law cited herein is persuasive evidence the Florida Supreme Court would decide the issue differently.

therefore, inevitably fall outside the reach of the 'independent tort rule' in any event"); *In re Jade Winds Ass'n,* No. 15-17570-BKC-RAM, 2019 WL 1386048, at *4 (Bankr. S.D. Fla. Mar. 25, 2019) ("[C]ontractual acknowledgement of a fiduciary relationship does not bar pursuit of an independent breach of fiduciary duty claim.").[5]

### *Conspiracy and Aiding and Abetting*

Counter-Defendants argue that summary judgment should be granted on USI's counterclaims for conspiracy and aiding and abetting on the ground that these claims require an underlying tort, and no such tort exists by virtue of the independent tort doctrine. For the reasons set forth above, the Court denies summary judgment based on the independent tort doctrine. Accordingly, the Court denies summary judgment on the conspiracy and aiding and abetting claims as well.

### *Fair Market Value Damages*

Counter-Defendants briefly argue for partial summary judgment on the viability of USI's "fair market value" damage model on the ground that this measure of damages is only available where the claimant's entire business has been destroyed. The Court has discussed this issue in detail in its separate order on USI's motion for partial summary judgment addressed to this same damage issue and on Counter-Defendants' motion to exclude testimony on this measure of

---

[5] The Court's ruling on this issue is without prejudice to Counter-Defendants' ability to argue in connection with jury instructions or in a motion for judgment as a matter of law at trial that no common law tort duty exists on the facts of this case. The point has not been sufficiently developed at this stage to support granting summary judgment.

damages.  As set forth in that order, while the Court rejects Counter-Defendants' argument based on the "complete destruction of business" rule, USI's fair market value approach is unavailable in this case for other reasons.  Accordingly, Counter-Defendants' motion for partial summary judgment is granted on the issue of fair market value damages.

Accordingly, it is hereby

**ORDERED**, **ADJUDGED, and DECREED**:

1.      "Counter-Defendants Matthew Simmons, Jack Mitchell, and Southeast Series of Lockton Companies, LLC's Motion for Partial Summary Judgment" (Doc. 127) is **GRANTED IN PART** and **DENIED IN PART**, as set forth herein.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>5th</u> day of March, 2024.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**