UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MATTHEW SIMMONS, SHEILA
MURRAY, JACK MITCHELL,
JACKIE RODRIGUEZ, MADISON
LIEFFORT, and EMILY CARTER,

    Plaintiffs,

v.                                    Case No.: 8:23-cv-201-TPB-AAS

USI INSURANCE SERVICES, LLC, a
foreign limited liability company and
USI ADVANTAGE CORP., a foreign
corporation,

    Defendants.
_____/

USI INSURANCE SERVICES LLC,

    Counter-Plaintiff,

v.

MATTHEW SIMMONS, JACK MITCHELL
and SOUTHEAST SERIES OF LOCKTON
COMPANIES, LLC,

    Counter-Defendants.
_____/

**ORDER GRANTING IN PART MOTIONS TO EXCLUDE TESTIMONY OF EXPERTS JUSTIN LEWIS, ANNE GRON, AND ELLIOT LASSON**

This matter is before the Court on motions filed with respect to three expert witnesses. These motions include "Counter-Plaintiff USI Insurance Services, LLC's Motion to Exclude Certain Opinions of Defendants' Damages Expert, Justin Lewis" (Docs. 125; 166), "Counter-Defendants' Motion to Exclude the Rebuttal Report of Dr. Anne Gron" (Doc. 129), and "Counter-Plaintiff USI Insurance Services, LLC's

Motion to Exclude Defendants' Expert Elliot Lasson" (Doc. 124), filed on November 30, 2023.  Responses in opposition were filed on December 21, 2023.  (Docs. 134; 137; 138).  Based on the motions, responses, the court file, and the record, the Court finds as follows.

## Background

The background for this case is set forth in detail in the Court's previous orders on USI's motion for a temporary restraining order and preliminary injunction.  (Docs. 31; 73).  That discussion is incorporated by reference.

Briefly stated, Plaintiffs/Counter-Defendants Matthew Simmons and Jack Mitchell were highly compensated "Producers" in the Tampa, Florida, office of Defendant/Counter-Plaintiff USI, a large commercial insurance broker.  Under the employment agreements between Simmons and Mitchell and USI, Simmons and Mitchell were free to leave USI to join USI's competitors, but among other things, they were required to provide a 60-day notice of resignation.  In addition, for two years post-employment, Simmons and Mitchell could not solicit or service accounts they formerly serviced while at USI.  They were also prohibited for two years from directly or indirectly soliciting other employees they had worked with at USI.

On January 25, 2023, Simmons and Mitchell resigned from USI via email, stating they would be joining USI's competitor, Southeast Series of Lockton, LLC, effective immediately. Within a few hours, Carter, Lieffort, Murray, and Rodriguez, who supported Simmons and Mitchell and worked on the accounts at issue, resigned effective immediately to join Lockton.

The same day, Simmons, Mitchell, and other Simmons team members filed a complaint against USI and USI Advantage Corp. in the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, seeking a declaration that their agreements are illegal and unenforceable. The action was removed to this Court by Defendants USI and USI Advantage Corp., who then filed an answer. USI also counterclaimed against Simmons, Mitchell, and against Lockton as an additional counterclaim defendant, alleging claims for injunctive relief, breach of contract, breach of fiduciary duties, tortious interference, conspiracy, and aiding and abetting breach of fiduciary duty.

The same day, several USI clients whose accounts were previously serviced by Simmons or Mitchell submitted "broker of record" letters naming Lockton as their new broker to handle their insurance needs. Since the morning of Simmons' resignation, 26 USI clients previously serviced by the Simmons team have moved all or a portion of their business to Lockton.

After leaving USI, Simmons, Mitchell, and the other Simmons team members serviced the accounts of former USI clients to one degree or another in violation of their agreements until the Court entered a temporary injunction prohibiting them from doing so. After the original order was entered, Lockton discovered that two additional former USI employees – Theresa Kemp and Chris Kakish – who were not expressly covered by the injunction order and were not named Plaintiffs in this litigation, were actively servicing one or more of these accounts. The Court then entered an additional order prohibiting them from doing so as well. It appears the prohibitions in the Court's orders have been complied with.

Trial is currently set to begin in April 2024, and the parties have filed various pretrial motions. This Order addresses motions filed by each side with respect to three expert witnesses. One expert, Elliot Lasson, deals with employee morale and an employer's ability to retain employees. The other two experts, Justin Lewis and Anne Gron, have offered various opinions relating to damages. The nature and scope of damages that may be recoverable under controlling law in this case is a significant issue, which the Court addresses in a separate order.

## Legal Standard

An expert witness may testify in the form of an opinion if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 579, 597 (1993). "The party offering the expert testimony bears the burden of establishing, by a preponderance of the evidence, the expert's qualification, reliability, and helpfulness." *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 942 (11th Cir. 2015) (citing *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc)).

Functioning as a gatekeeper, the district court plays an important role by ensuring that all expert testimony is reliable and relevant. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). Although *Daubert* references specific factors for the district court to consider when evaluating relevancy and reliability,

the inquiry is a flexible one, focusing on the principles and methodology employed by the expert, not on the conclusions reached. *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1305 (11th Cir. 2014); *see also Hanna v. Ward Mfg., Inc.*, 723 F. App'x 647, 649-50 (11th Cir. 2018) (outlining the criteria for the admissibility of expert witness testimony). Essentially, the Court is simply asked to determine if the evidence "rests on a reliable foundation and is relevant." *Daubert*, 509 U.S. at 597.

## Analysis

### *Justin Lewis (Docs. 125 and 166)*

Counter-Defendants' witness Justin Lewis, a CPA and valuation expert, offers opinions criticizing the analyses and conclusions of USI's experts Anne Gron and Robin Frost, including in particular Gron's and Frosts' opinions regarding the fair market value of accounts USI lost to Lockton and their calculations of lost profits. Lewis also offers affirmative opinions on USI's damages, which USI challenges as inadmissible. Specifically, in §§ 8.1.2 and 8.1.2.1 of his report, Lewis opines that, assuming Simmons and Mitchell breached their agreements by soliciting clients or other employees, no client accounts were lost as a result and no damages to USI resulted. In § 8.1.2, he alternatively opines that "the damages would be limited to USI's profits on specific accounts lost as a result of Simmons' solicitation during [the] two-year window" during which Simmons was prohibited from soliciting clients. In § 8.1.2.2, Lewis calculates the lost profits during the two-year period in which Simmons and Mitchell were prohibited from soliciting their former clients. Finally, in § 8.1.1, he calculates the amounts USI would have

earned on account renewals that would have taken place while Simmons and Mitchell remained at USI for 60 days had they given 60 days' notice of their intent to leave, as required by their agreements. USI argues that Lewis is not qualified to offer the foregoing opinions, and that they are speculative, unreliable, and will not help the trier of fact.

The Court largely agrees that Lewis' opinions in his report are inadmissible, including as to whether USI suffered any damages, as to which or how many clients would have stayed or left depending on whether Simmons and Mitchell breached their agreements, and as to the appropriate time period in which to calculate USI's damages amount. These opinions reflect purely factual conclusions based on Lewis' evaluation of the record evidence and his own investigation of the facts, with no apparent application of any relevant methodology or expertise. *See, e.g., United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991) (noting that "[a]n expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate the opinion"); *see also Mid-State Fertilizer Co. v. Exch. Nat'l Bank*, 877 F.2d 1333, 1340 (7th Cir. 1989) (rejecting an economist's "expert" opinion that drew on inferences from the record rather than any economic expertise). Lewis raises the types of points that counsel might raise through fact witnesses and closing argument to the jury. *See Frazier,* 387 F.3d at 1262-63 ("Proffered testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."). Moreover, the matters discussed are well within the competence of a lay jury that has heard the facts of this case from the percipient witnesses. *Hibiscus Assoc., Ltd.*

*v. Bd. of Tr. of Policemen & Firemen*, 50 F.3d 908, 917 (11th Cir. 1995) ("Expert testimony is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves.").[1]

Accordingly, even apart from any questions of Lewis' qualifications and the reliability of his opinions, which the Court need not address, the Court concludes the challenged opinions and analysis by Lewis will not be helpful to the jury and are inappropriate for expert testimony. However, Lewis may present calculations of damages based on hypothetical *assumptions* as to what might have happened in the hypothetical "but for" world in which Simmons and Lewis leave USI but do not breach their agreements. But he may not opine that USI has suffered no damages, that his assumptions are proper or consistent with the evidence, or that his calculations reflect the "damages" suffered by USI as a result of any breaches of duty by Counter-Defendants. That is a matter for the jury to decide based on the fact witnesses' testimony and arguments of counsel at trial.

### *Gron Rebuttal (Doc. 129)*

USI expert Anne Gron has submitted a rebuttal report that responds to Lewis. Among the points Gron raises is that any assumption that Simmons and Mitchell might have left USI and joined Lockton without breaching their agreements is flawed because it would have been economically irrational for Simmons and Mitchell to do that. Counter-Defendants argue that Gron's rebuttal report should be excluded on the ground that it amounts to nothing more than

---

[1] The same problems identified by USI appear in sections of Lewis' report that USI's *Daubert* motion does not challenge. At the pretrial conference, the Court will address the extent to which these opinions will be allowed.

arguing the evidence and indirectly trying to divine Simmons' and Mitchell's state of mind. *See, e.g., Frazier,* 387 F.3d at 1262-63 (expert testimony is not helpful to the jury when it simply presents points the lawyers could make in closing); *United States v. Evans*, 910 F.2d 790, 803 (11th Cir. 1990) (excluding as speculative testimony regarding the defendant's intent and understanding); *In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1338 (S.D. Fla. 2010) (holding that the issue of corporate motive and intent presented a classic jury question rather than an issue for experts).

Here, as with Lewis, the Court agrees that the proffered expert testimony is inadmissible. As explained above, the Court is permitting Lewis to testify to calculations based on assumptions about the "but for" world, but he will not be permitted to testify that the assumptions are supported by the evidence or that his calculations reflect USI's "damages." For the same reasons, Gron will not be allowed to testify as to the validity of assumptions about the hypothetical "but for" world, whether Simmons and Mitchell would have left USI without breaching their agreements, whether it would have been "rational" for them to do so, or what factors might have impacted such a hypothetical decision. To the extent such matters are relevant, the jury is capable of considering such matters based on the evidence and argument of counsel, and expert testimony would not be helpful.

### *Elliot Lasson (Doc. 124)*

Counter-Defendants' expert Elliot Lasson, an industrial and organizational psychologist, has prepared a report based on published research that includes such insights as: "A poor workplace environment and morale impair an employer's ability

to retain employees." As with the opinions and analyses by Lewis and Gron discussed above, even assuming Lasson is qualified and the studies he points to are reliable, expert opinions on these matters would not be helpful to the jury. A jury need not have experience working in a human resources department or corporate management to reach commonsense conclusions about the types of things that would have motivated USI employees to stay or leave USI, and they do not need an expert to assist them.

Even if this testimony were relevant and permissible under *Daubert*, it is highly likely the Court would exclude it pursuant to Fed. R. Evid. 611(a) ("The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth[; and] (2) avoid wasting time.") and Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . undue delay, wasting time, or needlessly presenting cumulative evidence.").[2]

---

[2] Should this case proceed to trial, the Court encourages counsel for both sides to familiarize themselves with the concepts expressed in these rules. Jurors are not volunteers. Rather, they are law-abiding citizens, with busy lives, who are required to surrender their time to assist the judiciary system in resolving other people's disputes. Many jurors are required to drive for as long as two hours, each way, from their homes to the courthouse. They are required to serve without meaningful financial compensation. As such, the Court, pursuant to its usual practice, will be carefully managing the flow of the trial to ensure that jurors' time is not wasted. Counsel will be given a fair opportunity to present their cases, but they will not be given carte blanche authority to present whatever evidence they choose, for as long as they choose.

Accordingly, it is hereby

**ORDERED**, **ADJUDGED, and DECREED**:

1. "Counter-Plaintiff USI Insurance Services, LLC's Motion to Exclude Certain Opinions of Defendants' Damages Expert, Justin Lewis" (Docs. 125; 166) is **GRANTED** as set forth herein.

2. "Counter-Defendants' Motion to Exclude the Rebuttal Report of Dr. Anne Gron" (Doc. 129) is **GRANTED** as set forth herein.

3. "Counter-Plaintiff USI Insurance Services, LLC's Motion to Exclude Defendants' Expert Elliot Lasson" (Doc. 124) is **GRANTED** as set forth herein.

4. The motions are otherwise denied.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>5th</u> day of March, 2024.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**