UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MATTHEW SIMMONS, SHEILA
MURRAY, JACK MITCHELL,
JACKIE RODRIGUEZ, MADISON
LIEFFORT, and EMILY CARTER,

    Plaintiffs,   CASE NO. 8:23-cv-201-TPB-AAS

vs.

USI INSURANCE SERVICES, LLC, a
foreign limited liability company and
USI ADVANTAGE CORP., a foreign
corporation,

    Defendants.
_____/

USI INSURANCE SERVICES LLC,

    Counter-Plaintiff,

vs.

MATTHEW SIMMONS, JACK MITCHELL
and SOUTHEAST SERIES OF LOCKTON
COMPANIES, LLC,

    Counter-Defendants.
_____/

**SUPPLEMENTAL ORDER GRANTING IN PART AND DENYING IN PART
COUNTERDEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ON TORTIOUS INTERFERENCE**

This matter is before the Court on "Counter-Defendants Matthew Simmons,

Jack Mitchell, and Southeast Series of Lockton Companies, LLC's Motion for

Partial Summary Judgment" (Doc. 127) filed on November 30, 2023.

Counterplaintiff USI Insurance Services, LLC filed a response in opposition on

December 21, 2023 (Doc. 135).  Counterdefendants filed a reply on January 11, 2023.  (Doc. 156).

On March 5, 2024, the Court entered an order granting Counterdefendants' motion in part and denying it in part.  (Doc. 179).  Specifically with respect to USI's claim for tortious interference, the Court denied summary judgment without prejudice but indicated that the Court would hear further argument on the issue.  On March 18, 2024, the Court held a pretrial conference and motion hearing during which it addressed the tortious interference claim, among other issues.  (Docs. 203; 206).  Having considered the matter further, the Court now grants summary judgment on the tortious interference claim in part and denies summary judgment in part.

## Background

The factual and procedural background and governing legal principles relating to USI's tortious interference claim are set forth in in prior orders of the Court and are incorporated by reference.  *See* (Docs. 31; 73; 178; 179).  Briefly stated, USI Insurance Services, LLC and Southeast Series of Lockton Companies, LLC are competing insurance brokerage companies.  Prior to January 25, 2023, Matthew Simmons and Jack Mitchell worked at USI as "Producers," meaning they find new clients, manage client relationships, and handle clients' insurance related needs.  Both Simmons and Mitchell had contractual agreements with USI related to their employment.  On January 25, 2023, Simmons and Mitchell resigned from USI without notice and the same day started work as Producers with Lockton.  Prior to

leaving USI and immediately thereafter, Simmons and Mitchell took various actions that USI contends breached their employment agreements. These actions included resigning without giving the required 60-days' notice, directly or indirectly soliciting clients and other employees to move from USI to Lockton, and then, after moving to Lockton, servicing the accounts of their former USI clients who had moved their business. Following Simmons' and Mitchell's actions and move to Lockton, a number of USI clients moved their business to Lockton.

Also on January 25, 2024, Simmons, Mitchell, and other former USI employees now working for Lockton filed a lawsuit in state court seeking a declaration the restrictive covenants in their contracts with USI are unenforceable. USI removed the case to this Court and filed a counterclaim asserting claims against Simmons and Mitchell for breach of their employment agreements and for breach of fiduciary duty, claims against Lockton for tortious interference and aiding and abetting a breach of fiduciary duty, and a claim against all Counterdefendants for conspiracy.

The Court granted a preliminary injunction in favor of USI prohibiting the Simmons team from servicing the accounts of their former USI clients. While Lockton was enjoined by this order to the extent necessary to enforce the prohibitions against Simmons and Mitchell, the Court did not grant injunctive relief against Lockton based on USI's claim that Lockton had tortiously interfered with USI's contractual relationships with Simmons and Mitchell. In that regard, the Court held that USI had not established a likelihood of success on the merits as to

that claim and in particular noted that it appeared such a claim would be foreclosed because Simmons and Mitchell were predisposed to breach their agreements with USI rather than being induced to breach by Lockton.

Lockton's motion for summary judgment as to USI's tortious interference claim again raised the issue of Simmons' and Mitchell's predisposition to breach. As noted above, the Court in its order of March 5, 2024, stated that summary judgment might well be appropriate on this issue but provisionally denied the motion and heard further argument on March 18, 2024.

## **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only the existence of a genuine issue of material fact will preclude summary judgment. *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable

inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

## Analysis

USI's tortious interference claim asserts that Lockton induced Simmons and Mitchell to breach various covenants in their employment contracts with USI. The elements of a claim for tortious interference with contract under Florida law are: (1) the existence of the contract, (2) the defendant's knowledge of the contract, (3) the defendant's intentional procurement of the breach of contract, (4) the absence of justification or privilege, and (5) damages resulting from the breach. *Johnson Enter. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1321 (11th Cir. 1998) (citing *Fla. Tel. Corp. v. Essig*, 468 So. 2d 543, 544 (Fla. 5th DCA 1985)).

Satisfying the third element requires proof that the defendant influenced, induced, or encouraged the contracting party to breach. *Farah v. Canada*, 740 So. 2d 560, 561 (Fla. 5th DCA 1999). In other words, the defendant must manifest a specific intent to procure a breach, and it must carry out that intent by inducing the contracting party to breach. *See Fiberglass Coatings, Inc. v. Interstate Chem., Inc.*, 16 So. 3d 836, 838-39 (Fla. 2d DCA 2009); *Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla, Inc.*, 832 So. 2d 810, 814 (Fla. 2d DCA 2002); *Farah*, 740 So. 2d at 561. As a corollary, the breaching party's "predisposition" to breach the contract precludes imposing liability on a third party for tortious interference. *See, e.g., Ingenuity, Inc. v. Linshell Innovations Ltd.*, 644 F. App'x 913, 916 (11th Cir. 2016); *Centennial Bank v. ServisFirst Bank*, No. 8:16-cv-88-CEH-CPT, 2022 WL 10219893, at *8 (M.D. Fla. Oct 10, 2022); *Fiberglass Coatings,* 16 So. 3d at 838-39; *Farah,* 740

So. 2d at 562.

Lockton argues the record demonstrates that Simmons and Mitchell reached out to Lockton already intending to take the actions USI alleges as breaches of their contracts. Accordingly, it argues, they were predisposed to breach, and Lockton cannot be held liable for tortious interference. USI responds that issues of fact remain because, even if Simmons and Mitchell already planned to switch employers more or less in the way they did, they did not actually do so until Lockton made it possible by offering them positions, compensation, and indemnification from any legal liability, and taking other steps to coordinate their departures from USI. Lockton's actions therefore "facilitated" or constituted a "but for" cause of the breaches by Simmons and Mitchell, in that what occurred would not have occurred, or would not occurred when or how it did, without Lockton's action and assistance.

The Court agrees with USI that the record evidence would support a jury finding that Lockton knew that Simmons' and Mitchell's planned course of conduct – as evidenced by their actions as well as their expressions of intent prior – would involve some clear breaches and some additional at least arguable breaches of their employment contracts with USI. These breaches included leaving USI without notice, notifying clients and other employees of their departure, and at least indirectly soliciting or influencing them, or attempting to, to move to Lockton. Lockton not only acquiesced in Simmons' plan, it took steps that allowed it to happen, including agreeing to compensate Simmons and Mitchell, agreeing to indemnify them, and agreeing to accept former USI clients as Lockton clients after

Simmons' and Mitchell's move to Lockton, which Simmons required as a condition of his moving to Lockton.

The Court concludes, however, that under Florida law, Lockton's actions do not rise to the level of tortious interference. The Court's reading of Florida law, based in particular on *Martin Petroleum Corp. v. Amerada Hess Corp.*, 769 So. 2d 1105, 1107 (Fla. 4th DCA 2000) and *Fiberglass Coatings,* 16 So. 3d at 838-39, is that the "inducement" versus "predisposition" inquiry focuses on whether it was the breaching party who reached out to the defendant with a preexisting intent to breach, or whether the defendant took the initiative to contact the breaching party to induce him or her to breach. That the defendant's actions somehow made the breach *possible* or *contributed* to the breach taking place, by itself, is not enough where it was the breaching party who took the initiative. *Martin* and *Fiberglass Coatings* both quote the rule stated in comment n to § 766 of the Restatement (Second) of Torts: "[a] party 'does not induce another to commit a breach of contract with a third person . . . when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person.'" *Fiberglass Coatings*, 16 So. 3d at 838 (quoting *Martin Petroleum*, 769 So. 2d at 1107).

The facts and holding of *Martin Petroleum* are particularly instructive. In *Martin Petroleum*, Martin supplied gasoline under a 10-year contract to Bamco, which operated a number of gas stations. *Martin*, 769 So. 2d at 1106. Hess supplied one of Bamco's gas stations that was not involved in the Martin-Bamco

contract. *Id.* Bamco approached Hess about having Hess supply Bamco's other stations as well, representing to Hess that the contract with Martin was terminable at will. *Id.* Hess offered its standard terms, and Bamco accepted. *Id.* Martin sued Hess for tortious interference. *Id.* at 1106-07. The trial court granted summary judgment for Hess, holding there was no interference as a matter of law because "it was undisputed that Bamco approached Hess, and not vice-versa." *Id.* at 1107.

In affirming summary judgment for Hess, the court cited the Restatement comment noted above, and continued by quoting this example from the same comment:

> For instance, B is under contract to sell certain goods to C. He offers to sell them to A, who knows of the contract. A accepts the offer and receives the goods. A has not induced the breach and is not subject to liability under the rule stated in this Section.

*Id.* Emphasizing that it was Bamco who had approached Hess to propose the course of conduct allegedly constituting a breach of Bamco's contract with Martin, the court concluded: "even if Hess had known that Bamco would be breaching a contract with Martin by purchasing its gasoline from Hess, Hess would not be liable under the facts of this case." *Id.*

In *Martin Petroleum*, then, Hess's actions manifestly facilitated or constituted a "cause" the complained-of breach of contract in the sense that the breach would not have occurred without Hess's action of entering into contract with Bamco. Hess's actions were absolutely necessary in order for the breach to occur, and they directly contributed to the breach. Yet, because the initiative was taken by Bamco, not Hess, the court held that even if Hess had known Bamco would be

breaching its contact with Martin by contracting with Hess, Hess would be free from liability for interference.

Accordingly, the Court rejects USI's argument that Lockton is liable because the breaches would not have occurred without Lockton's actions to facilitate the conduct contemplated by Simmons and Mitchell. The same could have been said of Hess's actions in *Martin Petroleum*. USI points to no evidence that the specific breaches of Simmons and Mitchell's employment agreements complained of by USI were undertaken at the request or suggestion of Lockton. Rather, Simmons and Mitchell approached Lockton with a pre-existing plan to take the actions they did in leaving USI. To be sure, there is evidence Lockton saw an opportunity to profit by this and aggressively moved forward knowing that Simmons and Mitchell would breach their contracts. But under Florida law, that is not enough for tortious interference.

The Court notes one exception to the foregoing. One of the claimed breaches by Simmons and Mitchell is that, after moving from USI to Lockton, they provided services to former USI clients who moved their business over to Lockton, at least until the Court entered an injunction prohibiting them from doing so. While the record is clear that Simmons and Mitchell were predisposed to engage in the other claimed breaches, it is less clear whether the plan to have Simmons and Mitchell service their former USI clients originated with Simmons and Mitchell or with Lockton. The same is true with respect to any assignment by Lockton of other

Simmons team members to service former USI client accounts after the team moved to Lockton.

Accordingly, the Court concludes USI's tortious interference claim survives summary judgment only as to this limited aspect of the claim. Presumably, the evidence may be supplemented and fleshed out at trial, and this ruling is without prejudice to Lockton's right to argue the sufficiency of the evidence on this point in the context of motion for judgment as a matter of law or the instructions to the jury.[1]

Accordingly it is

**ORDERED**, **ADJUDGED,** and **DECREED**:

1. "Counter-Defendants Matthew Simmons, Jack Mitchell, and Southeast Series of Lockton Companies, LLC's Motion for Partial Summary Judgment" (Doc. 127) is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

TOM BARBER
UNITED STATES DISTRICT JUDGE

---

[1] If this claim survives a motion for judgment as a matter of law, the Court intends to draft rather specific instructions to focus the jury on this narrow tortious interference claim. USI will not be permitted to present evidence or make arguments in support of the broader tortious interference claim that has been rejected herein.