## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MATTHEW SIMMONS, SHEILA
MURRAY, JACK MITCHELL,
JACKIE RODRIGUEZ, MADISON
LIEFFORT, and EMILY CARTER,

      Plaintiffs,                           CASE NO. 8:23-cv-201-TPB-AAS

vs.

USI INSURANCE SERVICES, LLC, a
foreign limited liability company and
USI ADVANTAGE CORP., a foreign
corporation,

      Defendants.
_____/

USI INSURANCE SERVICES LLC,

      Counter-Plaintiff,

vs.

MATTHEW SIMMONS, JACK MITCHELL
and SOUTHEAST SERIES OF LOCKTON
COMPANIES, LLC,

      Counter-Defendants.
_____/

## SUPPLEMENTAL ORDER GRANTING IN PART AND DENYING IN PART USI'S MOTION FOR SUMMARY JUDGMENT

On March 6, 2024, the Court granted in part and denied in part "USI's

Motion for Final Summary Judgment on Plaintiff's' Declaratory Action and for

Partial Summary Judgment on Counts II, III, and VI of USI's Counterclaim."

(Docs. 126; 181).  This Supplemental Order expands, clarifies, and to a limited

extent amends that earlier Order to more specifically address points made by the parties in their papers and further focus the issues for trial.

### *Enforceability of Restrictive Covenants*

The March 6, 2024, Order granted summary judgment for USI on the issue of the lawfulness, validity, and enforceability of the restrictive covenants at issue in this case. The Court had ruled in USI's favor on this issue at the preliminary injunction stage of the proceedings, *see* (Docs. 31; 73), and the Court's reasoning in its prior orders is incorporated herein by reference.

As explained in the prior orders, USI has demonstrated the existence of at least one legitimate business interest served by the restrictive covenants – protecting its substantial relationships with its clients. The Court's preliminary injunction orders rejected Plaintiffs' argument that Simmons' personal relationship with some of USI's somehow deprived USI of a protectable interest, and the Court reaffirms that ruling here.

The restraints imposed by the agreements are reasonably necessary to protect USI's legitimate interests. They allow Simmons and Mitchell to leave USI at any time and engage in their business as producers on behalf of a new employer, and to do so in direct competition with USI. The restraints only prohibit producers from soliciting and diverting clients they served while at USI, inducing clients to leave USI, or servicing clients on behalf of another broker, and those prohibitions extend for just two years post-employment. It also appears to be undisputed that USI has a protectible interest in its relationships with its employees. The

prohibition on soliciting those employees on behalf of another employer or otherwise inducing them to leave USI also appears reasonably necessary to further USI's interests.

Plaintiffs offer no evidence or argument that would support a finding the restraints are overbroad, overlong, or otherwise not reasonably necessary.  They argue that the prohibitions on acceptance or servicing of former clients are "unnecessary to protect legitimate business interests" and therefore invalid, but Florida courts have enforced such provisions.  *See Envt'l Serv., Inc. v. Carter*, 9 So. 3d 1258, 1266 (Fla. 5th DCA 2009).  Plaintiffs argue that the restrictions on soliciting co-workers would prevent even "innocuous" conversations between co-workers about their working conditions, but the restraints do not sweep so broadly. They prohibit only soliciting or hiring USI employees or otherwise inducing other employees to leave USI or breach their agreements.

As to the restraints' two-year duration, Plaintiffs are correct that the statute does not deem a two-year restriction *presumptively* reasonable.  However, courts have enforced two-year restrictions that prohibit all competition in a geographic area.  *See e.g., Supinski v. Omni Healthcare, P.A.*, 853 So. 2d 526, 532 (Fla. 5th DCA 2003).  As noted above, the restraints at issue here are more limited. Plaintiffs point to no evidence suggesting the two-year duration is unreasonable, do not identify any specific disputed issues of fact in that regard, and offer no factual basis on which the Court could modify the duration of the restraint.  *See Southernmost Foot & Ankle Specialists, P.A. v. Torregrosa*, 891 So. 2d 591, 594 (Fla.

3d DCA 2004) (trial court abused its discretion by reducing two-year restriction without a basis to do so).

Accordingly, the Court upholds the restraints at issue as valid and enforceable and grants summary judgment for USI on this issue.[1]  To the extent that USI's motion requests that a *final* judgment be entered on Plaintiffs' declaratory judgment action, the Court declines to do so at this stage of the proceedings.  The Court's preliminary injunction enforcing the restraints remains in effect, and the Court will include any appropriate relief as part of the final judgment in this case.  *See* Fed. R. Civ. P. 54(b).

### Breaches of Restrictive Covenants

The Court's March 6, 2024, Order also granted summary judgment for USI on Counts II and III of USI's counterclaim to the following extent:

> Simmons and Mitchell breached their agreements by failing to give the required notice prior to leaving USI and by taking actions that at least indirectly solicited, induced, or diverted, clients, accounts, and employees away from USI. At least some of those breaches caused damage to USI, but the extent and amount of the damage, if any, caused by one or more breaches remain disputed issues for trial.

The Court now expands upon and in limited respects amends these rulings as follows:

---

[1] Plaintiffs do not specifically challenge the enforceability of the provision requiring Simmons and Mitchell to give 60-days' notice prior to resigning.  This provision is also reasonable and enforceable.  For the same reasons set forth herein, the Court deems the restraints imposed in the agreements between USI and Plaintiffs Murray, Rodriguez, Carter, and Lieffort to be valid and enforceable.

<u>60-Day Notice</u>

Simmons' and Mitchell's employment agreements required that they provide 60-days' notice to USI before terminating their employment.  Specifically, the agreements provided: "Producer may terminate Producer's employment hereunder by giving at least sixty (60) days written notice to the company."  There is no dispute in this case that Simmons and Mitchell breached this provision by failing to give the required notice.  Accordingly, USI is entitled to summary judgment as to this issue, which will be taken as established for purposes of trial.  The amount of damages, if any, that may have resulted from this breach is a question for the jury.

<u>Non-Solicitation / Non-Diversion of Clients or Accounts</u>

Simmons' and Mitchell's employment agreements prohibited Simmons and Mitchell from soliciting or diverting USI clients or business or inducing USI clients to terminate, cancel, or non-renew their accounts:

> During the Terms and for two (2) years after Producer is no longer employed hereunder, for any reason, Producer shall not, without the Company's prior written consent, directly or indirectly, on behalf of any Competitive Business in any capacity: (i) solicit or attempt to solicit services in competition with the Company to any Client Account; (ii) divert or attempt to divert services away from the Company with respect to any Client Account; (iii) consult for any Client Account with respect to services in competition with the Company; (iv) sign a broker of record letter with any Client Account to provide services in competition with the Company; or (v) induce the termination, cancellation or non-renewal of any Client Account; in each case with respect to any Client Account that Producer managed or regularly serviced and/or about which Producer obtained Confidential Information on behalf of the Company within the last two (2) years of Producer's employment hereunder.

Under Florida law, the interpretation of an unambiguous written contract is a matter of law for the court and is therefore properly subject to disposition by summary judgment.  *See Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290, 1297 (11th Cir. 2011) (holding that summary judgment was properly entered based on interpretation of an unambiguous written contract); *Ciklin Lubitz Martens & O'Connell v. Casey*, 199 So. 3d 309, 310 (Fla. 4th DCA 2016) (interpretation of unambiguous contract presents a question of law for the court); *Gulliver Schools, Inc. v. Snay,* 137 So. 3d 1045, 1046 n.1 (Fla. 3d DCA 2014) (same).  The determination as to whether a contract provision is ambiguous is a question of law for the court.  *Strama v. Union Fidelity Life Ins. Co.*, 793 So. 2d 1129, 1132 (Fla. 5th DCA 2001).

By including broad covenants prohibiting even "indirect" solicitation, diversion, or inducement, Simmons and Mitchell's employment agreements unambiguously prohibited them from doing what they indisputably did: proactively and privately notifying individual USI clients they serviced regarding their impending departure, while still employed by USI, and while simultaneously failing to provide USI with notice of the same thing.[2]  Testimony by Simmons, Mitchell, or others as to the limited nature of their conversations with clients, or their own

---

[2] To "solicit" means to ask for or seek something; to "divert" means to turn a person or thing aside from one course or direction to another; to "induce" means to cause a person to choose one course of conduct rather than another.  *See Centennial Bank v. ServisFirst Bank Inc.*, 8:16-cv-88-T-36JSS, 2016 WL 7325545, at *10 (M.D. Fla. May 17, 2016), *report and recommendation adopted*, 2016 WL 4238766 (M.D. Fla. Aug. 11, 2016); *Gossard v. Adia Services, Inc.*, 723 So. 2d 182, 184 n.1 (Fla. 1998).

conclusions or opinions as to whether they had engaged in "solicitation," as opposed to merely "notifying" clients as a courtesy, do not create an issue of fact on whether they breached these provisions.  Their conduct constituted, as a matter of law, at least "indirect" solicitation, diversion, and inducement in violation of the agreements, giving rise to a potential claim for damages to the extent it caused clients to leave USI for Lockton.  While USI argues Simmons' and/or Mitchell's conduct went beyond mere notification of clients, and evidence on that point may be relevant and perhaps necessary to establish resulting damages, it is not necessary to establish a breach.

It appears undisputed that Simmons notified at least 27 clients regarding his impending departure.  *See* (Doc. 80-21 at 7-8).  Mitchell testified that he contacted two clients prior to leaving.  (Doc. 65-4 at 68).  Each of these contacts constituted a breach of contract.  The amount of damages, if any, that may have resulted from these breaches is a question for the jury.

Non-Interference with Employees

Simmons' and Mitchell's employment agreements also prohibited solicitation of other employees to leave USI:

> In consideration of Producer's employment with the Company, and for other good and valuable consideration, Producer agrees, during the Term and for two (2) years after Producer is no longer employed hereunder, for any reason, Producer shall not, directly or indirectly , on behalf of any Competitive Business in any capacity:  (a) solicit the employment, consulting or other services of, or hire, any other employee of the company; or (b) otherwise induce any such employee to leave the Company's employment or breach an employment agreement therewith . . .

Prior to his departure from USI, Simmons initiated contact with fellow USI employees Jack Mitchell, Shiela Murray, Jackie Rodriguez, Madison Lieffort, Emily Carter, Chris Kakish, and Theresa Kemp to notify them of his intention to leave USI for Lockton.  Unlike his communications with clients, merely notifying fellow employees with whom he worked closely of his intention to leave, without more, does not establish a breach of contract.  However, in his contacts with Murray, Rodriguez, and Carter, Simmons went further and also discussed or at least noted Lockton's superior resources, and told them that he was informing other team members of his plan.  As a matter of law, these affirmative contacts with Murray, Rodriguez, and Carter constituted at least indirect solicitation and inducement of these employees to leave USI for Lockton in violation of the agreement, giving rise to a potential claim for damages to the to the extent it caused employees to leave USI for Lockton.  The amount of damages, if any, that may have resulted from these breaches is a question for the jury.

The record evidence as to Simmons' contact with Lieffort does not permit a conclusion as a matter of law as to whether the contact amounted to solicitation or inducement.   Nor does USI's motion for summary judgment direct the Court to evidence regarding Simmons' conversations with USI employees Kakish or Kemp. Accordingly, whether Simmons' contacts with these individuals constituted breaches of contract remains to be determined by the jury.

As to Mitchell, the Court's March 6, 2024, Order stated generally that he also breached the prohibition on soliciting employees.  However, on further review, the

evidence does not support such a conclusion.  Accordingly, to the extent USI seeks summary judgment finding that Mitchell breached the prohibition on soliciting or inducing other employees to leave, the motion is denied.

### Breach of Fiduciary Duty

The contractual duties at issue here are significantly broader than the fiduciary duties imposed by Florida law.  The Court has determined that Simmons' and Mitchell's actions breached their respective contracts.  However, whether their actions also departed from the "finest and highest loyalty," *Donahue v. Davis*, 68 So. 2d 163, 171 (Fla. 1953), and instead, as USI argues, involved "planned and coordinated sabotage in violation of [their] fiduciary duties" present questions of fact to be determined by the jury.  Accordingly, as set forth in the Court's March 6, 2024, Order, USI's motion for summary judgment on its claims against Simmons and Mitchell for breach of fiduciary duty is denied.

### Affirmative Defenses

USI's motion for summary judgment correctly pointed out that most of the affirmative defenses pled by Counterdefendants are not true affirmative defenses, but merely denials that USI can establish the elements of its counterclaims. Counterdefendants seek to rely on a defense of prior material breach, based on allegations that USI did not sufficiently support Simmons' efforts as a Producer. The Court rejected that defense as a matter of law at the preliminary injunction stage and does so here as well.  Furthermore, the defense was not pled.  Even if the defense had been pleaded, the employment agreements expressly make the

prohibitions on solicitation and diversion of clients and employees independently enforceable, regardless of other terms of the agreements.

Counterdefendants argue that the 60-day notice provisions are not covered by the independent enforcement provisions.  However, as the Court previously noted, they point to no terms in the employment agreements imposing any particular obligations on USI with respect to support of Simmons.  They also offer no explanation as to how USI's failure to provide a level of support Simmons deemed to be satisfactory constituted not only a breach but a material breach that would excuse his performance of any contractual duties.  *See, e.g.*, *Burger King Corp. v. Mason*, 710 F.2d 1480, 1490 (11th Cir. 1983) (distinguishing between material and immaterial breaches of contract).

### *Remaining Issues To Be Tried – Breach, Causation, and Damages*

Accordingly, USI has established the enforceability of the parties' contracts and the breaches set forth above, and the jury will be so instructed. USI's motion for summary judgment is otherwise denied.  The issues of fact remaining for the jury to decide on USI's contract claims against Simmons and Mitchell will be:

(1) whether Simmons breached the contractual provision against soliciting or inducing employees to leave USI with respect to Lieffort, Kakish, or Kemp; and

(2) as to any breaches determined by the Court or by the jury to have occurred, whether any damage resulted from the breaches and, if so, the amount of any such damage.

Accordingly, it is

**ORDERED**, **ADJUDGED, and DECREED** that:

1.      "USI's Motion for Final Summary Judgment on Plaintiff's' Declaratory Action and for Partial Summary Judgment on Counts II, III, and VI of USI's Counterclaim" (Doc. 126) is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 18th day of June, 2024.

TOM BARBER
UNITED STATES DISTRICT JUDGE